IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DARLA LEGG,<br><br>      Plaintiff,<br><br>v.<br><br>ENCOMPASS HEALTH<br>MANAGEMENT SYSTEMS and IOWA<br>FOUNDATION FOR MEDICAL CARE,<br><br>      Defendants. | Case No. 4:10-cv-00432<br><br><br><br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF<br>RESISTANCE TO DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

**COMES NOW** the Plaintiff, Darla Legg, and hereby submits her Brief in Resistance to

Defendants' Motion for Summary Judgment.

<u>**TABLE OF CONTENTS**</u>                           **PAGE**

I.     INTRODUCTION ...............................................................................................2

II.    LAW GOVERNING SUMMARY JUDGMENT ...............................................3

III.   OVERVIEW OF THE FAMILY MEDICAL LEAVE ACT.................................5

      A.    NOTICE.......................................................................................................7

      B.    CERTIFICATION .......................................................................................7

      C.    EMPLOYER RESPONSIBILITIES .........................................................7

IV.   A REASONABLE JURY CAN FIND PLAINTIFF GAVE DEFENDANTS
       NOTICE OF HER NEED TO TAKE LEAVE ...................................................8

      A.    A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE
           DEFENDANTS NOTICE THAT HER LEAVE ON SEPTEMBER 25, 26,
           AND 29, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH
           CONDITION ..........................................................................................15

1

B.     A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE DEFENDANTS NOTICE THAT HER LEAVE ON JANUARY 12 AND 13, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH CONDITION ....................................................................................16

C.     A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE DEFENDANTS NOTICE THAT HER LEAVE ON JUNE 1 AND 2, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH CONDITION........17

V.     A REASONABLE JURY CAN FIND DEFENDANTS INTERFERED IN PLAINTIFF'S FMLA RIGHTS WHEN THEY REFUSED TO ALLOW HER TO LEAVE WORK TO GO TO THE HOSPITAL.................................................................19

VI.    A REASONABLE JURY CAN FIND DEFENDANTS INTERFERED IN PLAINTIFF'S FMLA RIGHTS WHEN THEY HELD HER PROTECTED LEAVE AGAINST HER .................................................................................................................20

VII.   A REASONABLE JURY CAN FIND DEFENDANTS INTERFERED IN PLAINTIFF'S FMLA RIGHTS WHEN THEY FAILED TO RESTORE HER TO HER POSITION .........................................................................................................20

VIII.  A REASONABLE JURY CAN FIND DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR TAKING FMLA LEAVE ..................................................................22

IX.    CONCLUSION.............................................................................................................23

## I.  INTRODUCTION

It is important at the onset to note what Defendants' Motion for Summary Judgment is not about.

- Defendants do not dispute that Plaintiff had serious health conditions that qualified her for the protections of the Family Medical Leave Act.

- Defendants do not contend they required Plaintiff to certify any particular medical leave but that she refused to do so.

- Defendants do not contend that Plaintiff ever violated Defendants' internal policies requiring her to provide them with notice when she was ill and could not work.

Defendants argue only the issue of notice under the Family Medical Leave Act.  The <u>sole</u> basis of Defendants' Motion for Summary Judgment is that Plaintiff did not provide them with notice of her need for FMLA leave because she never "sought" FMLA leave by filling out a formal certification.  Defendants' argument is a red herring, because employees are not required do anything remarkable in order to "seek" leave, let alone fill out a formal certification.

All that is required for an employer to have notice is for the employee to provide minimal information to raise the issue of whether the leave *might* be covered under the FMLA.  *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000).  At that point, the employer must either give the absence the protections of the FMLA or follow the procedures set out in the statute and regulations.  *Id.*

If further information is needed to ascertain whether the leave is covered, it is <u>the employer's</u> duty to inquire further.  29 C.F.R. § 825.303(b).  The expectation is that the employer can find out by informal means whether the leave qualifies for FMLA protection.  *Id.* However, the employer also has the option to require that the employee's doctor provide certification that the leave qualifies.  29 C.F.R. § 825.305(a).  If the employer wants certification, it has to tell the employee this, in writing, for each separate leave of absence.  *Id.*

## II.  LAW GOVERNING SUMMARY JUDGMENT

"Summary rulings are the direct antithesis of the full and fair process found in an adversary proceeding."  *Hillebrand v. M-Tron Industries, Inc.*, 827 F.2d 363, 364 (8th Cir. 1987).  This is especially true when credibility and motive are key issues.  "The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of

summary judgment." *Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1004 (8th Cir. 2006) (Lay, J., dissenting).

To be entitled to summary judgment, Defendants must prove there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c); *see Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The evidence of the nonmoving party is to be believed. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). "Uncontradicted" and "unimpeached" evidence of the moving party may also be believed, "*at least to the extent that* [such] *evidence comes from disinterested witnesses*." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here the plaintiff, and give her the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir. 1996). Summary Judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Webb v. St. Louis Post-Dispatch*, 51 F.3d 147, 148 (8th Cir. 1995).

When cases "turn on inferences rather than direct evidence, the court must be particularly deferential to the party opposing summary judgment." *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999); *accord Snow v. Ridgeview Med'l Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir. 1996); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). Employees "often have great difficulty in gathering information and can present only circumstantial evidence of discriminatory motives." *Christie v.*

*Foremost Ins. Co.*, 758 F.2d 584, 586 (7th Cir. 1986).  Moreover, "[t]he credibility of witnesses is often crucial" in employment discrimination cases.  *Id.*

In *Desert Palace v. Costa*, the United States Supreme Court held that courts cannot apply higher evidentiary standards in employment discrimination cases than in other types of cases. *Desert Palace v. Costa*, 539 U.S. 90, 99-101 (2003).  The *Costa* decision particularly noted that it makes no sense to apply higher evidentiary standards in a civil case than in a criminal case, where a person's life and liberty are on the line and where proof beyond a reasonable doubt is required.  *Id.* at 100.

Adequacy of an employee's notice under the Family Medical Leave Act is a fact-intense inquiry, dependent upon the circumstances in each particular case.  *Brown v. Kansas City Freightliner Sales, Inc.*, 617 F.3d 995, 997 (8th Cir. 2010); *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 790 n.9 (8th Cir. 2009).  "Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury."  *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008).

Because this case contains genuine factual disputes that will determine Defendants' liability for the discrimination and retaliation suffered by Darla Legg, this case must be decided by a jury.

### III. OVERVIEW OF THE FAMILY MEDICAL LEAVE ACT

The FMLA provides job security to employees who must miss work because of their own medical conditions, to care for ill family members, or because of new babies.  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1053 (8th Cir. 2006).  The rights guaranteed by the FMLA "set floors for employer conduct" which the employee may not waive or bargain away.  *Callsion v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

5

"Because FMLA grants to eligible employees the absolute right to take FMLA leave for qualifying reasons under the law, employers have no discretion in this area and cannot deny the legitimate use of FMLA leave for such purposes without violating the prohibited acts section of the statute."  Preamble to Department of Labor FMLA Regulations.

The FMLA entitles eligible employees to take leave totaling twelve weeks per year:

> (A)    Because of the birth of a son or daughter and in order to care for such son or daughter;
> (B)    Because of the placement of a son or daughter with the employee for adoption or foster care;
> (C)    In order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter or parent has a serious health condition;
> (D)    Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).  A "serious health condition" is one in which there is:  (1) a period of incapacity of three or more days, and (2)(a) treatment by a health care provider on at least two occasions or (b) treatment by a health care provider on one occasion followed by a regimen of continuing treatment such as prescription medication.   29 C.F.R. § 825.113; 29 U.S.C. § 2611(11).

A "serious health condition" also exists when an employee has a chronic condition.  29 C.F.R. § 825.115(c).  A chronic serious health condition is one which (1) requires periodic visits (at least twice a year) for treatment by a health care provider; (2) continues over an extended period of time (including recurring episodes of a single underlying condition); and (C) may cause episodic rather than a continuing period of incapacity.  *Id.*

Employees may use leave intermittently, in increments as small as the employer's payroll system measures.  29 C.F.R. § 825.202(a), (b)(1).

### A.  NOTICE

"An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice."  29 C.F.R. § 825.301(b).  There is no statutory requirement that an employee submit any formal or written request in order for her leave to be protected by the FMLA.  Verbal notice that the employee has a condition that *may* qualify is sufficient.  29 C.F.R. § 825.302(c).

### B.  CERTIFICATION

After the employee provides enough minimal information to raise the issue as to whether the leave might be covered under the FMLA, then the employer must either give the absence the protection of the FMLA or follow the procedures set out in the statute and regulations.  *Thorson*, 205 F.3d at 381.  The regulations allow employers to require that employees have their doctor complete a Certification form, attesting to their need for medical leave.  29 C.F.R. § 325.305(a); *see also* Appendix B to FMLA Regulations.  There is no requirement that an employee provide a Certification form unless the employer specifically asks her to do so.  *Id.*

### C.  EMPLOYER RESPONSIBILITIES

Not only do employers have a "prescriptive" obligation under the FMLA:  they must grant employees substantive rights guaranteed by the FMLA; they also have a "proscriptive" obligation: they may not penalize employees for exercising these rights.  *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999); *Stallings*, 447 F.3d at 1055; *Darby v. Branch*, 287 F.3d 673, 679 (8th Cir. 2002).

The statute forbids an employer from discriminating or retaliating against employees who have used FMLA leave or who have made complaints related to the FMLA.  29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(a).  It prohibits interference with employees' rights, including

discouraging employees from taking leave.  29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1) .

Employers cannot use leave that is protected by the FMLA as a negative factor in employment

actions, nor can FMLA leave be counted under "no fault" attendance policies.  *Beekman v.*

*Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 906 (N.D. Iowa 2009).

The FMLA permits individual enforcement through civil actions filed in federal or state

court.  29 U.S.C. § 2617(a)(2).  Available damages include lost wages, liquidated damages, and

equitable relief such as reinstatement.  29 U.S.C. § 2617(a)(1).

## IV. A REASONABLE JURY CAN FIND PLAINTIFF GAVE DEFENDANTS NOTICE OF HER NEED TO TAKE LEAVE

The medical leaves in question include:

- September 25, 26, and 29, 2008

- January 12–13, 2009

- June 1–2, 2009

Defendants do not argue that Darla Legg failed to certify these FMLA leaves.  They do

not even contend that they *asked* her to certify these absences.  Defendants claim only that Darla

failed to give notice that she needed FMLA leave to begin with.  They either misunderstand the

FMLA's notice requirement or they are deliberately attempting to lead the Court astray.

All Darla needed to do to give Defendants notice of her need for FMLA leave was to tell

them she had been absent for work for a condition that might qualify as a "serious health

condition."  She did this on each of these occasions, only for Defendants to go ahead and count

those absences against her anyway.

Darla told her supervisor, Shannon Harden, that she had diabetes, asthma, hypertension,

aortic stenosis, and sleep apnea, chronic bronchitis, and chronic sinus infections, for which she

received ongoing medical treatment.  Nevertheless, when Darla took medical leave for these conditions, those absences were held against her.

The information Darla provided was sufficient to put Defendants on notice that her conditions may have qualified as chronic serious health conditions.  Chronic conditions can be serious health conditions even when they do not cause a period of incapacity of more than three consecutive days.  29 C.F.R. § 825.115(c); *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 461 (W.D. Pa. 2008).  The United States Department of Labor has explained that

> Certain conditions, ***such as asthma and diabetes***, continue over an extended period of time (*i.e.* from several months to several years), often without affecting day-to-day ability to work or perform other activities but may cause episodic periods of incapacity of less than three days.  Although persons with such underlying conditions generally visit a health care provider periodically, when subject to a flare-up or other incapacitating episode, staying home and self-treatment are often more effective than visiting the health care provider.

Preamble, 60 Fed. Reg. 2180, 2195 (emphasis added).

As long as they are medically necessary, absences due to a chronic health condition qualify for FMLA leave even if the employee does not receive treatment during the absence.  29 C.F.R. §§ 825.115(c); *Hayduk*, 580 F. Supp. 2d at 461.

Even if the jury does not find they were "chronic," there is no question that Darla was absent on account of bronchitis, sinus infections, and ear infections that met the criteria for "serious health conditions."  Each of the leave of absence in question involved:  (1) a period of incapacity of three or more days, and (2)(b) treatment by a health care provider on one occasion followed by a regimen of continuing treatment in the form of prescription medication.  *See* 29 C.F.R. § 825.113; 29 U.S.C. § 2611(11).

There is also no real dispute that she gave Defendants notice that she was taking leave for those conditions and that Defendants penalized her for it with formal disciplinary action and, ultimately, termination.

As noted above, there is no requirement that an employee submit any kind of formal request that her leave be protected by the FMLA. "The employee need not expressly assert rights under the FMLA or even mention the FMLA." *Thorson*, 205 F.3d at 381; 29 C.F.R. § 825.301(b). The employee does not have to use the word "leave" or "leave of absence." *Cavin v. Honda of America Mfg.*, 346 F.3d 713, 723 (6th Cir. 2003).

Rather, "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee *may* be in need of FMLA leave." *Browning v. Liberty Mutual Ins.*, 178 F.3d 1043, 1049 (8th Cir. 1999) (emphasis added). "The burden on the employee to give FMLA notice is not onerous or overly-technical and it is usually easily satisfied." *Taylor v. Virtua Health Inc.*, 2007 WL 1827094 at*8 (D.N.J.). For instance, when Darla Legg told Shannon Harden that she had been sick with bronchitis and sinusitis from September 25 through September 29, that she had received medical treatment and been prescribed antibiotics, Defendants were on notice that Darla's absences on September 25, 26, and 29 may well have qualified for FMLA protection.[1]

At this point, Defendants had an obligation to provide Darla with an "eligibility notice." 29 C.F.R. § 825.300(b). As soon as an "employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the

---

[1] Plaintiff need not prove here that she suffered from one or more serious health conditions because Defendants have not moved for summary judgment on that basis. The important fact is that what she told Defendants at the time should have clued them in to the fact that her health conditions might meet the criteria for a "serious health condition."

employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." *Id.* The employer must also provide the employee with a written "rights and responsibilities notice" to inform her whether the employer is requiring her to furnish certification of her serious health condition and the consequences if she fails to do so. 29 C.F.R. § 825.300(c)(ii). "Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R. § 825.300(c)(5).

"If the employer does not have sufficient information about the employee's reason for taking leave, 'the employer should inquire further to ascertain whether the paid leave is potentially FMLA-qualifying.'" *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir. 1995) (emphasis added). After all, we are talking about "workers, not lawyers." *Id.* at 763.

Nowhere are these principles reflected more clearly than in *Spangler v. Fed. Home Loan Bank*, 278 F.3d 847 (8th Cir. 2002). Spangler left her supervisor a voice mail message saying she would not be in that day because of "depression again." *Id.* at 849-50. The Eighth Circuit held the employee's simple statement, "depression again," was a "potentially valid request for FMLA leave." *Id.* at 852. It noted that the employer knew she had received medical treatment for depression in the past; therefore, a reasonable jury could find the employer had a duty to find out whether her current condition would qualify as a "serious health condition." *Id.* at 852-53. When an employee provides notice that her leave might qualify under the FMLA, "it then becomes the employer's duty to determine whether or not the employee actually requires FMLA leave if there is some doubt as to whether or not the request would qualify." *Id.* at 853. "'The responsibility to request FMLA certification is the employer's.'" *Id.* (quoting *Thorson*, 205 F.3d at 381-82). If the employer had notice that Spangler's depression might be a serious health

11

condition, then "a jury could decide the [employer] violated the provisions of the FMLA by summarily dismissing Spangler instead of either providing her with FMLA leave or following the FMLA's certification procedure to determine the validity of the request for leave." *Id.*

Like Spangler's employer, Defendants were well aware that Plaintiff had suffered from various specific medical problems for years. Yet Darla Legg still provided Defendants with much more detailed information than did Spangler. Nonetheless, for Darla's medical leaves in question Defendants failed to provide Darla with either an eligibility notice or a rights and responsibilities notice. Most importantly, Defendant failed to designate the leaves as FMLA leaves and then discriminated against Plaintiff for taking the leaves.

Just as in *Spangler* and the case at bar, the defendant in *Miller v. GB Sales & Serv., Inc.*, 275 F. Supp. 2d 823 (E.D. Mich. 2003), knew the plaintiff had some ongoing medical conditions. The notice that she gave her employer had to be evaluated in light of the employer's prior knowledge. *Id.* at 829; *see also Spangler*, 278 F.3d at 852. GB's "knowledge of Miller's serious health conditions placed the burden on it to inquire further whether Miller called in sick for medical reasons to determine if those reasons were FMLA-qualifying." *Id.* Because GB failed to do so, summary judgment was granted in favor of Miller (the employee). *Id.* at 830.

This case is <u>unlike</u> *Brown v. Kansas City Freightliner Sales, Inc.*, 617 F.3d 995 (8th Cir. 2010), cited by Defendants. There, the employee disavowed any injury when he left work for the day, although he "called in sick" the next four days. *Id.* at 998. He did not tell his employer anything to suggest he had seen a medical provider, that he was on prescription medication, or any other information indicating his condition might be a "serious health condition" within the meaning of the FMLA. *Id.* at 996. The Eighth Circuit properly held the employee had failed to give adequate notice. *Id.* at 998.

Defendants claim *Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1037 (8th Cir. 2010), stands for the proposition that:  "When an employee is aware of the procedures necessary to obtain FMLA leave and chooses not to seek FMLA protection, the employee does not give adequate notice of the need for FMLA leave."  Def. Brief, 3.  <u>That is not what *Kobus* says</u>. Kobus' employer did not just "make him aware" of the procedures to file FMLA leave; the employer gave him a Certification form and told him he had to fill it in order to obtain FMLA leave for the particular absence in question.[2]  *Id.* at 1037.  The FMLA statute and regulations specifically allow employers to require employees to certify their leave.  29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(d).  "*An employer must give notice of a requirement for certification <u>each time a certification is required</u>.*"  29 C.F.R. § 825.305(a) (emphasis added).  <u>It is not enough for an employer just to adopt a policy stating certification is always required.</u>  *Perry v. Jaguar of Troy*, 353 F.3d 510, 514 (6th Cir. 2003).  "Even though the need for medical certification was stated in defendant's employee handbook, the regulations required defendant again to ask for certification after [the employee gave notice of his need for leave]."  *Id.*

Numerous other courts have agreed.  For instance, in *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 959 (S.D. Ohio 2005), the employer relied on its employee handbook as a "blanket notice" to employees that it required a medical certification each time an employee wanted FMLA leave.  The court held the blanket notice provision violated 29 C.F.R. § 825.305(a), requiring the employer to give notice of any certification requirement "each time a certification is required."  *Id.* at 961.  "Use of the term 'each time' indicates that the employee is required to notify the employee on a per occasion basis that it wants medical certification to

---

[2] Kobus expressly rejected the opportunity and said he did not want FMLA leave.  *Id.*

substantiate the need for FMLA leave." *Id.* "In other words, the regulation indicates that a general notice that the employee wants medical certification for an absence is insufficient." *Id.*

The case of *Henderson v. Whirlpool Corp.*, 17 F. Supp. 2d 1238 (N.D. Okla. 1998), is also on point. There, Whirlpool asserted that the plaintiff received notice, through the employee handbook, that it required her to provide medical certification whenever she went on FMLA leave. *Id.* at 1246-47. The court disagreed and held the mere existence of the policy did not satisfy Whirlpool's obligation to notify the plaintiff "each time a certification is required." *Id.* (quoting 29 C.F.R. § 825.305(a)).

The Court pointed out that adopting Whirlpool's argument would "convert[ ] the right of the employer to require medical certification into an additional obligation on the employee" "and result[ ] in a significant modification of the statute." *Id.* at 1248.

> The effect would be to write into the law a trip to the doctor every time an employee requests medical leave. This result is contrary to the terms of the statute, illogical, and inconsistent with the legislative intent. Therefore, the Court concludes, as a matter of law, that a blanket requirement for medical certification in the policy manual cannot satisfy an employer's obligation to notify an employee that medical certification is requested "each time a certification is required."

*Id.* Other cases which have addressed this issue include: *Michener v. Bryanlgh Health Sys.*, 2009 WL 2840530 at *4 (D. Neb.); *Webster v. Hilex Poly Co., L.L.C.*, 2007 WL 2694650 at *6 (S.D. Ind.); *Lucterhand v. Granite Microsys., Inc.*, 2007 WL 703400 at *7-8 (E.D. Wisc.); *Tornberg v. Bus. Interlink Servs., Inc.*, 237 F. Supp. 2d 778, 785-86 (E.D. Mich. 2002). They have all held similarly.

The *Kobus* case does not pretend to address adequate notice under the FMLA. It is a certification case; not a notice case. The Eighth Circuit explicitly recognized this in the opinion: "Many cases have turned on whether the employer failed to perceive an FMLA duty based on

general information the employee provided about his or her medical condition.  But here, as the district court recognized, *that is not the issue*."  *Id.* (emphasis added).

Conversely, the adequacy of certification is not the issue in the case at bar.  There is <u>no</u> evidence whatsoever that Defendants ever asked Darla Legg to obtain a doctor's certification for any of the three medical leaves at issue.

An employee need not submit a medical certification in order to be entitled to the benefits of the FMLA.  "Medical certification . . . is an option for the employer, not a requirement of the employee as a prerequisite either to receiving leave or to maintaining an action."  *Pendarvis v. Xerox Corp.*, 3 F. Supp. 2d 53, 56 (D.C. 1998).  The *only* notice an employee needs to provide in order to be entitled to job protection is verbal notice containing facts that show her condition may possibly qualify as a serious health condition.   29 C.F.R. §§ 825.302(c), 825.303.   From that point on, the employer is obliged to treat her leave as protected by the FMLA unless and until it finds out differently, through informal means or by following the regulatory scheme with respect to requesting certification.  *See* 29 C.F.R. § 825.305(a).

### A.  A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE DEFENDANTS NOTICE THAT HER LEAVE ON SEPTEMBER 25, 26, AND 29, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH CONDITION

Defendants incorrectly assert that, in September 2009, "Legg did not provided [sic] sufficient information to indicate she required continuing care for her illness and, was thus, suffering from a serious health condition."  Def. Brief, 7.  This is certainly disputed.  Shannon Harden's own contemporaneous notes show she knew that Darla was suffering from bronchitis and sinusitis.  It is within the ordinary experience of jurors that these conditions typically entail a doctor's diagnosis and treatment with antibiotics.  In addition, Harden is a registered nurse and

would obviously be aware of this.  By definition, a doctor's visit combined with prescription of an antibiotic is "continuing care" under the FMLA.[3]

Moreover, Plaintiff has put forth evidence that Darla *told* Harden that her doctor had prescribed Levaquin and Albuterol to treat her bronchitis and sinusitis.  Harden does not even take issue with Darla's testimony that Darla always told her about her prescription medications. Harden readily acknowledged that Darla probably communicated such information, but that Harden simply did not care or even take note of it:

> **Q.    If she told you what medications the doctor had prescribed, would you necessarily write those down?**
>
> **A.    No.**
>
> **Q.    Did she sometimes tell you things like that?**
>
> **A.    *I'm sure she did, but in one ear and out the other ear, not of importance to me.***

(Harden Dep. 61) (P. App. 12) (emphasis added).

Darla has testified that she always kept Harden informed as to the medications she had been prescribed while out on leave.  The Court must take her at her word.  Especially in light of Harden's admissions, the jury is certainly entitled to believe Darla.

> **B.  A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE DEFENDANTS NOTICE THAT HER LEAVE ON JANUARY 12 AND 13, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH CONDITION**

---

[3] A "serious health condition" can be treatment once by a health care provider which results in a "regimen of continuing treatment" under the supervision of the health care provider.  29 C.F.R. § 825.115(2).  "A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic)."  29 C.F.R. § 825.113(c).

Defendants tell the Court about a doctor's note Darla provided on January 12 and 13, 2009, but fail to acknowledge the evidence that Darla also told her supervisor that the doctor had prescribed her the antibiotic Levoquin.  If Darla is telling the truth, then Defendants knew that her absences on January 12 and 13 for sinusitis and acute pharyngitis required a "regimen of continuing treatment," defined to include one doctor's visit plus a course of antibiotics.  *See* 29 C.F.R. §§ 825.113(c); 825.115(a)(2).

Given that Harden herself does not question that Darla told her about her prescription medications, it is difficult to imagine any reasonable jury doubting it.

The information that Darla's condition met the regulatory criteria for a serious health condition would have alerted any reasonable employer that her absences *may* certainly have qualified for FMLA protection.  When an employer is aware that a worker is off work, under a doctor's care, and taking medication, it has sufficient notice that the worker may be entitled to FMLA leave.  *See, e.g., Dollar v. Smithway Motor Express, Inc.*, 787 F. Supp. 2d 896, 913 (N.D. Iowa 2011).

### C.  A REASONABLE JURY COULD FIND THAT PLAINTIFF GAVE DEFENDANTS NOTICE THAT HER LEAVE ON JUNE 1 AND 2, 2009, MAY HAVE BEEN BECAUSE OF A SERIOUS HEALTH CONDITION

During her leave on June 1 and 2, Darla told Harden that she had an ear infection and/or strep throat.  Again, these are conditions for which a reasonable employer could assume the employee has seen a doctor and has been prescribed antibiotics.  Nevertheless, Darla also reported to Harden what the doctor had told her about her medical condition, how long she would be off work, and what medications she had been prescribed.  Dr. Miller had, in fact, prescribed Darla the antibiotic Levaquin.

17

Shannon Harden told Darla that she did not care why Darla was out on medical leave and that doctors' excuses did not help her at all.  When Darla would bring in a doctor's note, Harden repeatedly told her "they did not matter," that it was the number of times you are gone, not whether the doctor feels you had a medical reason to be gone.  Thus, although Dr. Miller asked Darla if she need a doctor's note, she declined, explaining to him that doctor's excuses did not make any difference to her employer.

The jury will also have the opportunity to examine the notice Darla gave Defendants in the context of Defendants' refusal to communicate with her about the FMLA.  Employers have a duty "*to responsively answer* questions from employees concerning their rights and responsibilities under the FMLA."  29 C.F.R. § 825.300(c)(5) (emphasis added).  Defendants failed to do so.

Shannon Harden refused to discuss the FMLA with Darla.  When Darla tried to find out whether the FMLA might cover certain of her health conditions, Harden responded by telling her to look at the website or to contact Medsoft, Defendants' third-party FMLA vendor.  Harden admits that when employees would ask whether a particular absence might qualify them for FMLA protection, she would just tell them to get on the Intranet and "read for themselves." (Harden Dep. 44-45) (P. App. 8).

When Darla turned to Medsoft for assistance with specific questions, it sent her a form letter telling her to have her doctor complete a certification form if she wanted FMLA leave. Medsoft made no effort to answer Darla's simple question about whether FMLA leave was available in short increments.

Since Defendants had never bothered to provide Darla with any training on the FMLA or even to answer her direct questions, she thought that the protections of the FMLA applied only if

18

leave was certified in advance.  She had no idea that it could never be used to protect absences that had already occurred.

## V.  A  REASONABLE  JURY  CAN  FIND  DEFENDANTS  INTERFERED  IN PLAINTIFF'S FMLA RIGHTS WHEN THEY REFUSED TO ALLOW HER TO LEAVE WORK TO GO TO THE HOSPITAL

Defendants knew Darla suffered from chronic asthma for which she received ongoing medical treatment.  She kept an inhaler at work which supervisors saw her use.

On one occasion toward the end of the workday, Darla began having an asthma attack. She asked Harden for permission to leave work and go to Mercy to get a treatment.  Harden refused, saying she only had an hour left and could not leave until her shift was complete.  "By the time I left, my asthma was—I was choking so bad, I could barely drive myself and probably shouldn't have drove myself the two blocks to the emergency [room].  In fact, they could hear me wheezing when I came in, and they took me right back, because my asthma was so bad." (Legg Dep. 148-49) (P. App. 35-36).

It is "unlawful for any employer to interfere with, restrain, or *deny* the exercise of or the attempt to exercise, any right provided under" the FMLA.  29 U.S.C. § 2615(a)(1) (emphasis added); 29 C.F.R. § 825.220(a)(1).  Illegal "interference" includes an employer's refusal to authorize FMLA leave.  *Stallings*, 447 F.3d at 1050; *Phillips*, 547 F.3d 911.

To successfully claim interference with FMLA rights, "an 'employee must show only that he or she was entitled to the benefit denied.'"  *Beekman*, 635 F. Supp. 2d at 909 (quoting *Stallings*, 447 F.3d at 1050).  The employer's intent is immaterial.  *Stallings*, 447 F.3d at 1050. When Defendants denied Darla the right to leave work and receive treatment for her asthma attack, they interfered with her rights under the FMLA.

19

## VI. A REASONABLE JURY CAN FIND DEFENDANTS INTERFERED IN PLAINTIFF'S FMLA RIGHTS WHEN THEY HELD HER PROTECTED LEAVE AGAINST HER

An employer also commits interference by "discouraging an employee from using" FMLA leave or by engaging in "action that deters" an employee from exercising his or her FMLA rights. *Id.*; *see also* 29 C.F.R. § 825.225(b). "When an employer attaches negative consequences to the exercise of protected rights, it has "chilled" the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so." *Beekman*, 635 F. Supp. 2d at 910 (citing *Bachedler v. American West Airlines*, 259 F.3d 1112, 1124 (9th Cir. 2001)).

"Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).

If the jury finds that Darla's absences on the dates in question were covered by the FMLA, then she wins. There is no dispute that those absences were the reason she was fired. All it takes to establish liability is one FMLA-protected absence among a list of absences for which the employee is fired. *Cavin*, 346 F.3d at 726; *Barnett v. Revere Smelting & Refining Co.*, 67 F. Supp. 2d 378, 388 (S.D.N.Y. 1999).

Harden admitted that Darla's final FMLA-protected leave on June 1 and 2, 2009, was "the final straw" that led to her termination. The jury will have all the evidence it could possibly need to find Defendants liable for interference with Plaintiff's FMLA rights.

## VII. A REASONABLE JURY CAN FIND DEFENDANTS INTERFERED IN PLAINTIFF'S FMLA RIGHTS WHEN THEY FAILED TO RESTORE HER TO HER POSITION

The FMLA grants the employee not only the right to take leave, but also provides the employee with the crucial right to be restored to her position of employment upon returning from leave so long as leave was taken for its intended purpose. *See* 20 U.S.C. § 2614(a)(1)(A). "Without this right, an employee might be allowed to take the leave, but would have no job after using that leave." *Jennings v. Mid-American Energy Co.*, 282 F. Supp. 2d 954, 960 (S.D. Iowa 2003) (*citing* Stacy A. Hickox, *The Elusive Right to Reinstatement under the Family Medical Leave Act,* 91 Ky. L.J. 477, 482 (2002)).

When Darla returned to work on June 3, 2009 after medical leave, Defendants waited only until she had trained someone else to do billing; then they fired her.  She was not restored to her position.  While the FMLA does not require an employer to keep an employee indefinitely after she returns from medical leave, the law's protections extend beyond reinstating a person to do a job for less than one day. *Burke v. Lab. Corp. of Am.*, 2009 WL 3242014, *5 (M.D. Fla).  Returning someone to a position only long enough to fire them does not amount to meaningful reinstatement under the statute. *Id.*

Technically, "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights." *Throneberry v. McGehee County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005).  However, "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Id.* at 977; *see also Phillips*, 547 F.3d at 911-12.

Defendants have not attempted to prove they would have decided to fire Darla in the absence of her medical leaves of absence, nor does it seem likely they could do so.  It is

undisputed that Darla was an excellent employee and that they fired her solely because of what they perceived as "unscheduled absences."

## VIII.  A  REASONABLE  JURY  CAN  FIND  DEFENDANTS  RETALIATED AGAINST PLAINTIFF FOR TAKING FMLA LEAVE

The FMLA also prohibits employers from discriminating and retaliating against employees for exercising their rights under the Act. *Gordon v. Gerard Treatment Programs, L.L.C.*, 390 F. Supp. 2d 826, 837 (N.D. Iowa 2005) (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002)).  Accordingly, an employee who has suffered "an adverse employment action based on… [his or her] exercise of FMLA rights" may bring an action for retaliation under the FMLA. *Id.* (quoting *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005)).

Defendants make the curious statement that "Legg's only arguable exercise of FMLA rights was her seeking and obtaining approved FMLA leave for pre-scheduled treatment in October 2008."  Def. Brief 14.  Defendants completely ignore Darla's actual *taking* of FMLA leave, which is also protected activity.

The Eighth Circuit has questioned whether this claim is properly labeled "retaliation" or "interference." *Scobey*, 580 F.3d at 790.  Irrespective of the label, there is no question that it is illegal for an employer to fire an employee for taking leave that is protected by the FMLA. *See, e.g., Podkovich v. Glazer's Dist. of Iowa, Inc.*, 446 F. Supp. 2d 982, 1009 (N.D. Iowa 2006); *Morgan v. FBL Fin'l Servs., Inc.*, 178 F. Supp. 2d 1022, 1032 (S.D. Iowa 2001); *Ozolins v. Northwood-Kensett Cmty. Sch. Dist.*, 40 F. Supp. 2d 1055, 1066 (N.D. Iowa 1999).

Likewise, there is no issue but that Plaintiff suffered an adverse employment action. She was fired.

Plaintiff can also demonstrate a causal connection between her taking medical leave and her termination.  Defendants actually *admit* that she was fired because she took medical leave.  The only issue for the jury will be whether Plaintiff's leave was protected by the FMLA.  There are no eligibility issues, with respect to either Plaintiff or Defendants.  The jury will simply have to determine whether (1) Plaintiff suffered from one or more serious health conditions; and (2) whether she gave Defendants adequate notice that her conditions *may* qualify for FMLA protection.

If the jury decides both questions in Plaintiff's favor, then her evidence of the causal connection is direct and unchallenged.  Defendants admit they fired her because she took medical leave.

## IX. CONCLUSION

Courts are required to interpret the Family Medical Leave Act broadly in order to effectuate its remedial goals.  *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 862 (8th Cir. 2000).  In interpreting the relevant provisions of the FMLA and applying them to the facts of this case as they appear in the light most favorable to Plaintiff, it is clear that a reasonable jury could find the Defendants liable for their violations of the FMLA.

FIEDLER & TIMMER, P.L.L.C.


        */s/ Paige Fiedler*
Paige Fiedler AT 0002496
paige@employmentlawiowa.com
Brooke Timmer AT 0008821
brooke@employmentlawiowa.com
2900 100th Street, Suite 209
Urbandale, IA 50322
ATTORNEYS FOR PLAINTIFF

23

Copy to:

Frank Harty
Debra L. Hulett
Stacey Hall
NYEMASTER, GOODE, WEST,
  HANSELL & O'BRIEN, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
ATTORNEYS FOR DEFENDANT

<div style="border:1px solid black; padding:8px;">

**ELECTRONIC PROOF OF SERVICE**

I, hereby certify that on the 18th day of November, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

**Signature:**   ___/s/ Fiedler & Timmer_____

</div>